211 A.2d 633.

DANIEL M. MELLOR *vs.* ASTRID D. LEIDMAN.

JUNE 24, 1965.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

JOSLIN, J. This is a petition in equity in the nature of quo warranto brought pursuant to G. L. 1956, §10-14-1. The petitioner seeks the ouster of the respondent from the office of city clerk of the city of Cranston and the confirmation of his own title to that office. After the respondent joined issue by the filing of an answer, the parties filed a stipulation containing an agreed statement of facts.

It appears that on January 4, 1965 the city council elected petitioner to the office of city clerk. Upon advice of the city solicitor that it had no authority so to do without having first removed respondent, the council thereafter at a special meeting held on January 18, 1965 adopted two resolutions, one providing that respondent's term of office as city clerk should expire on January 29, 1965 and the other reading as follows:

"Mr. President: I move that a written notice of the intention of the City Council to remove her from the office of City Clerk be served on Astrid Leidman as follows:

"City Council
City Hall
Cranston, Rhode Island

"To: Mrs. Astrid Leidman
223 Scituate Avenue
Cranston, Rhode Island

"Dear Madam:

"Please take notice that at Midnight on Friday, January 29, 1965, your term of office as City Clerk will expire.

"You are hereby notified that you will not be reappointed to this office.

"It is the intention of the City Council of the City of Cranston to remove you from the office of City Clerk for the reason that it is no longer the pleasure of the

majority of the City Council that you serve in that office.

"You are further notified that the City Council of the City of Cranston will meet at 8:00 p.m. on Friday, January 29, 1965, in the Council Chamber, Third Floor, City Hall, Cranston for the purpose of giving you the opportunity to be heard if you so desire and present any reason why you should not be removed from the office. The hearing shall be public at your option and you may be represented by counsel.

"In accordance with Section 3.18 of the Charter, from the time of service of this notice upon you, you are suspended from the performance of any duty or function for the City.

"/s/ Anthony Antonucci
Anthony Antonucci
Council President

"This 18 day of January, 1965"

The respondent was served with notice as required by the foregoing resolution and appeared with counsel at the hearing and testified. Although admittedly the performance of her official duties had been satisfactory and according to law, a majority of the council voted to remove her from and to elect petitioner to the office of city clerk. This petition was filed upon her refusal to surrender the office notwithstanding the vote of ouster.

Initially we inquire whether the city clerk, a council-appointed official who, under sec. 4.01 of the charter, serves "for an indefinite term," is entitled to the benefits and protections afforded by sec. 3.18 which in pertinent part provides that:

"The council by majority vote of all its members may remove any officer or member of a board or commission appointed by it, for any reason, provided he shall first have been served with a written notice of the intention of the council to remove him, containing the reasons for removal and fixing a time and place * * * at which he shall be given an opportunity to be heard in his defense. The hearing shall be public at the option of the person

sought to be removed and he may be represented by counsel. * * * The provisions of section 3.17 relating to the administration of oaths and enforcement of the attendance of witnesses shall apply to all hearings conducted under this section and the council shall summon such witnesses on behalf of the person sought to be removed as he may request. Upon the conclusion of the hearing the decision of the council shall be final."

The petitioner contends that because the city clerk serves for an indefinite rather than for a fixed term, compliance with sec. 3.18 is not a precedent to an ouster from that office, and he concludes that his appointment by the council on January 4, 1965 constituted a termination of respondent's term of office.

Although his contention raises a question of statutory construction relating to whether one who holds office for an indefinite term is embraced within the terms of sec. 3.18, he points to nothing therein nor to any other provision in the charter, nor have we been able to discover any, which indicates a contemplation that the application thereof either should be limited to officials such as the judge of the probate court or members of the zoning board of review who are appointed by the council for fixed terms or should not be extended to an officer like the city clerk who has no fixed tenure. Indeed, the contrary is true, for by its plain language sec. 3.18 includes "any officer or member of a board or commission." That language is not reasonably susceptible of a construction either restricting application of the section to those appointed for definite terms or excluding therefrom one holding office for an indefinite term. It is indicative of a clearly-expressed purpose to include all council-appointed officials, irrespective of the term of office.

Moreover, had the charter framers intended that the city council should be free from the restraints of sec. 3.18 when the removal sought was that of the city clerk, they would have followed the pattern fixed in sec. 5.02. In the first paragraph of that section it is provided that the heads of

certain municipal departments shall be appointed by and serve *at the pleasure* of the mayor; and in the second paragraph those department heads are not included within the enumeration of such of the mayor's appointees as are entitled to the protections of the removal procedures therein established. Both the failure to use sec. 5.02 language, or wording of like import, in sec. 3.18 and the phrasing used in the latter section, including as it does *any* officer or member of a board or commission, compel the conclusion that the city clerk, notwithstanding his indefinite term, was not intended to be excepted from its removal provisions.

Having determined that sec. 3.18 permits of no exception, and that observance of its provisions is a prerequisite to the removal of *any* official appointed by the council pursuant thereto, we now focus our attention on whether the city council complied with its directives when it attempted to oust respondent. Since the parties are in agreement as to the council's observance of the procedural requirements therein established, the only question is whether under sec. 3.18 a removal may be effected for the sole reason that it is no longer the pleasure of a majority of the city council that an incumbent continue to serve in the office to which he has been appointed. We refer advisedly to an *incumbent* for, as we have already indicated, the restraints established in sec. 3.18 on the power of the council to remove apply to all council-appointed officers and board or commission members including the city clerk.

It has long been settled in this state that removal proceedings acquire quasi-judicial status when the law vesting the power to remove in a local body indicates that it shall be *for cause* and requires notice of charges, a hearing and an opportunity for the person sought to be removed to present evidence in his own behalf. *Davis* v. *Cousineau,* 97 R. I. 85, 196 A.2d 153; *Narragansett Racing Ass'n* v. *Kiernan,* 59 R. I. 79; *Hanna* v. *Board of Aldermen,* 54 R. I. 392; *Garvin* v. *McCarthy,* 39 R. I. 365; *McCarthy* v. *Board*

*of Aldermen,* 38 R. I. 385. The petitioner, however, argues that in those cases the controlling legislation provided that removal should be for misconduct or disqualifying incapacity, or for the good of the service, or *for cause* and he concludes that they are without precedential value in this case where under sec. 3.18 removal may be "for any reason."

That contention whatever its merits might be in other circumstances has none here where the charter requires that the person sought to be removed be advised of the reasons for his discharge, given notice of and afforded a public hearing, have the assistance of counsel and the opportunity to be heard in his own defense, and be privileged to secure the attendance of witnesses and to compel the production of documents. Additionally, he is entitled to have a decision rendered by the council at the conclusion of the hearing. The inclusion of those requirements was obviously purposed and designed to insure the city an efficient public service and to permit those who serve to be free of concern as to job security so long as they satisfactorily perform the duties of their offices. These are the kinds of procedural requirements which are the indicia of a proceeding judicial rather than summary in nature. They are the ingredients which mandate that the removal authority sit as a quasi-judicial body. *Morgan* v. *Thomas,* 98 R. I. 204, 200 A.2d 696; 4 McQuillin, Municipal Corporations (3d ed.) §12.256, p. 334.

The nature of the required hearing being judicial, the reason advanced for removal may not be arbitrary and must rest on substantial grounds. *Narragansett Racing Ass'n* v. *Kiernan, supra; Aniello* v. *Marcello,* 91 R. I. 198. This is so whether the controlling law provides that removal shall be *for cause, Narragansett Racing Ass'n* v. *Kiernan, supra,* or for misconduct or disqualifying incapacity, *Hanna* v. *Board of Aldermen, supra,* or for the good of the service, *Aniello* v. *Marcello, supra,* or merely requires that the offi-

cer to be removed be notified of the grounds of the proposed action, *Morgan* v. *Thomas, supra,* or as in this case where the removal may be for *any reason.* So long as the public servant is entitled to a pre-ouster hearing judicial in nature, an attempt to remove him for the reason that it no longer pleases the removal authority that he continue to serve will be deemed capricious action lacking in reason and without warrant at law. Ouster for any such reason cannot be condoned.

To determine otherwise would nullify carefully spelled out hearing requirements and would have us construe the intent of the framers as being to impose upon the city council an obligation to engage in formalistic hearing procedures which have neither significance nor meaning and which can serve no useful purpose. The protections afforded by sec. 3.18 to the person sought to be removed will be of little assistance if the charge he is called upon to defend against is that it no longer pleases the council that he continue to serve. To that charge no defense he can offer will permit his retention of office, for the result of the hearing will have been determined prior to its being held. To construe sec. 3.18 as petitioner urges is to invite us to negate language presumably used for a purpose and to neglect our obligation to give effect to all parts of that section. This we will not do. *Britto* v. *Fram Corp.,* 93 R. I. 426; *Ewing* v. *Tax Assessors,* 90 R. I. 86.

So that there may be no question as to the extent of our decision. we hold specifically that in these circumstances and where the law clearly and explicitly demands a hearing quasi-judicial in nature, the indefiniteness of the term of the official sought to be removed does not insulate the removing body from the necessity of complying with all of the requirements prescribed for an ouster, including, of course, a valid ground or reason for the dismissal. *McKenna* v. *White,* 287 Mass. 495; *State ex rel. Early* v. *Wunderlich,*

144 Minn. 368; 4 McQuillin, Municipal Corporations (3d ed.) §12.249, p. 298.

Our decision in *Nugent ex rel. Beck* v. *Leys,* 88 R. I. 446, upon which petitioner places his principal reliance, is of no assistance to him. That case turned on the ousted city manager's status as an employee under contract with a municipality, and his entitlement upon dismissal under the language of the Newport charter to a legislative hearing rather than to one judicial in nature. In this case, respondent is a public officer entitled to a judicial hearing.

In our opinion the respondent is legally entitled to the office of city clerk in the city of Cranston, and the petitioner has no valid title to that office.

The petition is denied and dismissed, and on July 7, 1965 a decree in accordance with this opinion may be presented for entry by the court.

CONDON, C. J., dissenting. The ineluctable effect of the court's decision is to provide a definite term for the city clerk, namely, life, whereas sec. 4.01 of the charter plainly provides that it shall be indefinite. I assume that no one will deny that an appointment for life is for a definite term. The certainty of death marks the limit of such a term. Now an appointment cannot be both definite and indefinite, consequently in my opinion the court has amended the charter. This is an exercise of the power of legislation which is beyond its jurisdiction. What it cannot lawfully do directly it may not do indirectly under the guise of judicial construction. Because I think it has done so, I dissent.

On my view of the pertinent language of sec. 4.01 the appointment of the city clerk was at the will of the city council and as such it does not come within the purview of sec. 3.18. Like a tenancy at will in the law of real estate this is one of the weakest of tenures, if not the weakest. Why the people of Cranston chose to provide so weak a tenure for the city clerk we do not know. It may be that since he is by virtue of his office also clerk of the council

and as such its chief administrator, they intended the council to have absolute freedom of choice in the appointment and retention of an officer so intimately connected with it. This is not an unreasonable inference and as counsel for petitioner suggests seems to be particularly pertinent in view of the fact that the charter provides for party government by means of partisan elections.

In that connection it is significant that the court's decision will nullify such intention and impose upon the new majority party in the council as its clerk a member of the rejected minority party in whom it has no confidence. Be that as it may there is no need to search for hidden reasons why the people chose to provide a special tenure for the city clerk so markedly different from the tenures of other appointive officers. In the present instance we need go no further than the clear and unambiguous language of sec. 4.01 and apply it as it is written.

That language needs no construction. In such circumstances to attempt to construe it is to strain for a result that is in effect legislative amendment and not judicial construction. Thus in the case at bar the court's construction has resulted in providing a definite term of office for the city clerk whereas sec. 4.01 expressly provides for an indefinite term. I find it impossible to view this result as anything but legislation under the guise of construction. On this view I regret that I cannot concur in the court's decision but must dissent.

*Gallogly, Beals, Tiernan & Sweeney, David F. Sweeney,* for petitioner.

*James L. Taft, Jr.,* for respondent.