DECISION
The Plaintiffs, the Foster-Glocester Regional School Building Committee and all eight of its members ("RBC"), seek declaratory and injunctive relief. The Defendants, four of the five members of the Glocester Town Council ("The Council"), are being sued in both their official and individual capacities. The RBC seeks a declaration that the Council cannot remove RBC members. The RBC also seeks injunctive relief to restore former RBC member Gregory Laramie (Laramie) to the RBC and to prevent future removal attempts by the Council. In the alternative, the RBC asks the Court to declare that in the event that the Council can remove RBC members, it only can do so "for cause" and after a hearing. *Page 2 
Although the current issue before this Court is Plaintiffs' request for preliminary injunction, the question of a likelihood of success on the merits requires this Court to analyze the same dispositive question of law that it ultimately would have to answer in its declaratory ruling; namely, whether the Council's legislative authority to appoint members of the RBC also implicitly gives the Council the power to remove those appointed members. Because this Court answers in the negative, final judgment is appropriate at this time. Jurisdiction is pursuant to the Uniform Declaratory Judgment Act, G.L. 1956 § 9-30-1, and § 8-2-13, which provides this Court with jurisdiction for actions seeking equitable relief of this nature.
 I Facts and Travel
The facts necessary for this declaratory determination are undisputed.
1. P.L. 1958 Ch. 109 (The Act) authorized the formation of the Foster-Glocester Regional School District, the Regional School District Committee, and the RBC. P.L. 1958 Ch. 109.
2. The RBC was created at the behest of the Regional District School Committee. The RBC consists of eight members, four of whom are appointed from Foster and four from Glocester. The membership from each town consists of one member from the town's local school committee, elected by that school committee, and three members selected by the respective town councils. Each council must select at least one of those members from the regional school planning board.[1] *Page 3 
3. The Act makes no provision for the removal of RBC members.
4. The Act provides that in the event of a vacancy, it "shall be filled by the representation from the town in which the vacancy shall occur." P.L. 1958 Ch. 109 § 4(c).
5. In 2004, pursuant to the Act, the Foster-Glocester Regional School District voted to create the RBC in order to build a new middle school, and to renovate the existing middle school for the purpose of annexing it as a new wing of the existing high school.
6. Laramie has been the chairman of the RBC since its inception. Laramie is a Glocester Council appointee, albeit appointed by a previous Council.
7. The new middle school is now open, and renovations recently began on the old middle school.
8. There has been conflict between Laramie and the Council regarding the Council's ability to oversee the actions of the RBC. On November 1, 2007, the Council voted to remove Laramie from the RBC.
9. On November 13, 2007, the RBC filed suit seeking this Court to declare that the Council does not have the authority to remove members of the RBC, and to confirm Laramie's right to remain on the RBC. The RBC also seeks injunctive relief to reinstate Laramie, and to prevent the Council from further removal attempts in the future.
10. On November 13, 2007, a Justice of this Court granted the RBC's request for Temporary Restraining Order. Said order temporarily reinstated Laramie and enjoined the Council from further removal attempts. *Page 4 
 II. Standard of Review
The Uniform Declaratory Judgment Act vests the Superior Court with the "power to declare rights, status, and other legal relations."Bradford Associates v. Rhode Island Division of Purchases, 772 A.2d 485,489 (R.I. 2001) (quoting § 9-30-1). Such declarations "shall have the force and effect of a final judgment or decree." Id. A person may seek such a declaration when that person has "rights, status, or other legal relations" which are "affected by a statute, municipal ordinance, contract, or franchise." Section 9-30-2.
Claims for both injunctive relief and a declaration under the Uniform Declaratory Judgment Act may be brought in the same suit. See Parente v.Southworth, 448 A.2d 769 (R.I. 1982). Before issuing an injunction as final judgment; "a court must survey the facts and apply the traditional tests for equitable relief. This involves balancing the equities, weighing the hardships to either side, and examining the practicality of imposing the desired relief. In addition, the complaining party must show that any legal remedy would be inadequate." R.I. Turnpike andBridge Authority v. Cohen, 433 A.2d 179, 182 (R.I 1981)
 III. Analysis
The dispositive legal issue that this Court must determine is whether the appointment power in the Act confers authority upon the Foster and Glocester Councils to remove their appointed members. The Council's position is that the power to appoint contained in the Act implicitly gives the Council the power to remove. The Council points to the cases of Cullen v. Adler, 107 R.I 749, 271 A.2d 466 (1970) (Town Council's power to remove tax assessor was *Page 5 
implied from appointment power), and Lewis v. Porter, 78 R.I. 358,82 A.2d 399 (1951) (City Council's power to remove the building inspector was implied from appointment power), for the proposition that — absent statutes to the contrary — removal power is implied from appointment authority.
The RBC counters that both Lewis and Cullen only grant implied removal power in situations where the appointed position directly affects the appointing authority's responsibilities or operations. The RBC contends that it is a wholly separate entity from the Council and, therefore, the Council cannot have implied removal power.
The Rhode Island Constitution, Art. XII, § 1, charges the Legislature with the responsibility to "promote public schools . . . and to adopt all means which it may deem necessary and proper to secure to the people the advantages and opportunities of education. . . ." R.I. Const. Art.XII, § 1. The Rhode Island Supreme Court has held that despite the Home Rule Amendments in Art. VIII of the Rhode Island Constitution, any municipal charter amendments that affect education must be ratified by an explicit Legislative act in order to comply with the Legislature's duties under Article XII, § 1. See Town of Johnston v. Santilli,892 A.2d 123, 128 (R.I. 2006) ("`[N]o provision affecting education contained within a home rule charter, so called, can effectively regulate the conduct of school committees as agents of the state unless expressly validated by an act of the general assembly.'") (citing Royalv. Barry, 91 R.I. 24, 160 A.2d 572, 575 (1960)) (emphasis added).
The RBC has the same "agent of the State" status as school committees because 1) the RBC was authorized by the Act, which also created the Regional School District and the Regional School Committee; 2) the RBC is formed upon the direction of the Regional School Committee; and, 3) the RBC's building and oversight authority is exclusively reserved by the *Page 6 
various municipal-wide school committees throughout the state.See G.L 1956 §§ 45-50-10(2), 16-3-11(a)(4). Accordingly, the authority of the Council to appoint members of the RBC does not alter the RBC's status as an agent of the State.
Although the Rhode Island Supreme Court recognized implied removal power in Lewis, Cullen, and Appeal of John H. Willard, 4 R.I. 597
(1857), those cases involved the removal of persons in subordinate offices to the removing authority. In this case, the Council asserts implied removal authority over a non-subordinate, legislative agent.
In Rhode Island there exists no legal precedent supporting implied inter-governmental removal power. Furthermore, even if such precedent existed, it would not apply to educational agents of the Legislature because explicit legislative delegation is required to comply with Article XII, § 1 of the Rhode Island Constitution. The reasoning inTown of Johnston and Royal — that legislative ratification of municipal charter amendments affecting education is required to comport with Art.XII § 1 of the Rhode Island Constitution — also requires an explicit delegation of removal power over an educational agent of the legislature.
Accordingly, this Court declares that in order for the Council to have removal authority over its RBC members, there must be explicit legislation to that effect. There are no provisions in the Act, or any other legislative acts, which specifically grant removal authority to the Council. Therefore, the Council was without authority to remove Laramie from the RBC.[2] *Page 7 
In so declaring, this Court does not conclude that members of the RBC may never be removed. Although not an issue presently before this Court, for the purposes of discussion this Court notes that the RBC may have an inherent power to self regulate. Generally, the removal of School Committee members "is to be determined from applicable provisions of state legislation." McQuillin, Municipal Corporations 3rd
Ed. 16b § 46.06. In this case, there are no statutes or town charters governing the removal of Regional School District Committee members or RBC members. Accordingly, general principles of government self-regulation may apply to the RBC. See U.S. Const. Art. I sec. 5
(House and Senate may each remove members by a two thirds vote); R.I. Const. Art. VI, sec. 7 (Both State Senate and House may each remove members by a two thirds vote); 56 Am. Jur. Municipal Corporations § 131 (A Municipal Council has an inherent power to expel its members); Glocester Home Rule Charter, art. IV, §§ C4-3, C4-7, C6-3 (Glocester Town Council may remove its own members for cause and declare vacancies, and the Glocester School Committee may declare vacancies among its membership); Roberts Rules of Order (10th ed.), p. 640 I. 12-13 (A member of an organization may be expelled by a two thirds vote of its membership).[3]
This Court does not mean to suggest the RBC operates with complete autonomy. Indeed, this Court notes that an aggrieved RBC member who has been removed by his or her fellow members if RBC self-regulation is appropriate, or a Town Council aggrieved by certain decisions of the RBC, has broad rights of appeal to the Commissioner of Education, the Board of Regents for Elementary and Secondary Education and eventually, the Rhode Island Supreme Court. See §§ 16-39-1, 16-39-2, 16-39-3;see generally Pawtucket Sch. Comm. v. Pawtucket Teachers *Page 8 Alliance, 610 A.2d 1104 (R.I. 1992); Jacob v. Board of Regents forEduc., 117 R.I. 164, 165-166, 365 A.2d 430, 431 (1976).
 IV. Conclusion
This Court declares that the Glocester Town Council and its member are without authority to remove Laramie from his position as a member of the RBC. The Court orders Laramie reinstated as a member of the RBC and enjoins the Glocester Town Council from further attempts to remove him from the RBC.
Counsel shall submit an appropriate order consistent with this opinion.
[1] Public Law 1958 Chapter 109 § 4 states:
 "There shall be a regional district school building committee which shall consist of eight members, four of whom shall be from each member town.
 "The Representation from each member town shall consist of one member from the respective local school committee and elected or appointed by said local school committee; and three members selected by the town council of such town, at least one of whom shall be from the regional school planning board of such town."
[2] This declaration does not address the authority the Council may have to declare one of its RBC seats vacant under the vacancy provision of 4(c) of the Act, which provides: "In event of a Vacancy on the regional district school building committee said vacancy shall be filled by the representation from the town in which the vacancy shall occur." P.L. 1958 Ch. 109 § 4(c). (See generally Powers v. Caswell 79 R.I. 188,86 A.2d 379 (1952) ("In view of respondent's intentional and unequivocal conduct in disregard of the duties of his offices, the council, acting in the public interests, in effect notified him that unless he showed cause to the contrary his long-continued and voluntary abandonment of the offices was and would be considered tantamount to a resignation. Such a request is quite different from the preferring of charges for the purpose of removing him from office").
[3] Additionally, if the RBC may remove its own members, whether the removal must be "for cause" is not presently before the Court. Nevertheless, this Court cannot envision a situation where removal without cause would have been intended by the legislature, or where it would make for good public policy.